UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ACADEMY OF EDUCATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-1266 (TNM) |
| DEPARTMENT OF EDUCATION, et al., | |
| Defendants. | |

**DEFENDANTS' COMBINED MOTION TO DISMISS AND FOR RELIEF FROM
LOCAL RULE 7(N), AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents ......................................................................................................... i

Table of Authorities ..................................................................................................... ii

Introduction .................................................................................................................. 1

Background ................................................................................................................... 2

    I.     Statutory Background ....................................................................................... 2

    II.    Factual Background ......................................................................................... 3

    III.   Procedural Background .................................................................................... 5

Legal Standards ........................................................................................................... 6

Argument ...................................................................................................................... 8

    I.     The Court Should Dismiss the Amended Complaint for Lack of Subject-Matter
           Jurisdiction. ...................................................................................................... 8

           A.    Several of the Plaintiffs' Claims Are Moot. ................................................ 8

           B.    Plaintiffs Lack Standing ............................................................................. 11

           C.    The Court Lacks Jurisdiction Over Plaintiffs' Challenge to the
               Cancellation of the Institute's Contracts. ................................................... 14

    II.    Plaintiffs Fail To State a Claim Under the APA. .............................................. 18

           A.    Plaintiffs Seek Impermissible Programmatic Review. ............................. 18

           B.    There Are Adequate Alternative Remedies Available. ............................. 21

           C.    The Department's Programmatic Implementation Decisions Are
               Committed to Agency Discretion. ............................................................. 22

    III.   Defendants Should Be Relieved of Their Obligation to File a Certified List of the
            Administrative Record and Serve the Administrative Record Simultaneously with
            this Motion. ...................................................................................................... 24

Conclusion .................................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama-Coushatta Tribe of Tex. v. United States,*
    757 F.3d 484 (5th Cir. 2014) ................................................................. 18

*Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.,*
    357 F.3d 62 (D.C. Cir. 2004) ................................................................. 16

*Am. Chemistry Council v. Dep't of Transp.,*
    468 F.3d 810 (D.C. Cir. 2006) ............................................................... 13

*Am. Farm Bureau v. EPA,*
    121 F. Supp. 2d 84 (D.D.C. 2000) ........................................................... 6

*Architects & Eng'rs for 9/11 Truth v. Raimondo,*
    Civ. A. No. 21-2365 (TNM), 2022 WL 3042181 (D.D.C. Aug. 2, 2022) .............................. 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................... 7, 8

*Ass'n of Battery Recyclers, Inc. v. EPA,*
    716 F.3d 667 (D.C. Cir. 2013) ............................................................... 25

*Attias v. Carefirst, Inc.,*
    865 F.3d 620 (D.C. Cir. 2017) ................................................................ 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................... 7, 8

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ................................................................. 15, 21, 22

*Cannon v. District of Columbia,*
    717 F.3d 200 (D.C. Cir. 2013) ................................................................ 8

*Carroll v. Office of Fed. Contract Compliance Programs,*
    235 F. Supp. 3d 79 (D.D.C. 2017) ........................................................... 24

*Chafin v. Chafin,*
    568 U.S. 165 (2013) ........................................................................ 9

*Chamber of Com. of U.S. v. EPA,*
    642 F.3d 192 (D.C. Cir. 2011) ............................................................... 13

*City of Olmsted Falls v. Fed. Aviation Admin.*,
    292 F.3d 261 (D.C. Cir. 2002) .......................................................................... 22

*Clark v. Feder Semo & Bard, P.C.*,
    527 F. Supp. 2d 112 (D.D.C. 2007) .................................................................. 17

*Coal. for Humane Immigrant Rts. v. Dep't of Homeland Sec.*,
    Civ. A. No. 25-0943 (TNM), 2025 WL 1078776 (D.D.C. Apr. 10, 2025)............... 11

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006) .................................................................... 18, 19

*Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*,
    313 F. Supp. 3d 285 (D.D.C. 2018) .................................................................. 14

*Connecticut v. Dep't of Interior*,
    344 F. Supp. 3d 279 (D.D.C. 2018) .................................................................. 24

*Ctr. for Biological Diversity v. Nishida*,
    Civ. A. No. 21-119 (RDM), 2021 WL 827189 (D.D.C. Mar. 4, 2021) ................... 14

* *Daimler Trucks N. Am. LLC v. EPA*,
    745 F.3d 1212 (D.C. Cir. 2013) ................................................................... 8, 11

* *Dep't of Educ. v. California*,
    145 S. Ct. 966 (2025) ............................................................................... 15, 17

*Drake v. FAA*,
    291 F.3d 59 (D.C. Cir. 2002) ........................................................................... 23

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ........................................................................................ 22

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ........................................................................................ 11

*FEC v. Akins*,
    524 U.S. 11 (1998) .......................................................................................... 12

*Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*,
    423 U.S. 326 (1976) ........................................................................................ 22

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ........................................................................................ 24

*Friends of Animals v. Jewell*,
    828 F.3d 989 (D.C. Cir. 2016) ................................................................. 12

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) .................................................................. 21

\* *Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ......................................................................... 15, 21

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ................................................................................ 23

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ................................................................................ 12

*Hurd v. District of Columbia*,
    864 F.3d 671 (D.C. Cir. 2017) .................................................................... 8

\* *Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ................................................................... 17

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
    937 F. Supp. 2d 18 (D.D.C. 2013) .............................................................. 7

*Jerome Stevens Pharm., Inc. v. FDA*,
    402 F.3d 1249 (D.C. Cir. 2005) .................................................................. 6

*Jibril v. Mayorkas*,
    101 F.4th 857 (D.C. Cir. 2024) ........................................................... 21, 22

*LaRoque v. Holder*,
    679 F.3d 905 (D.C. Cir. 2012) .................................................................... 9

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) .................................................................. 20

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ......................................................................... 22, 23

*Littlefield v. Dep't of Interior*,
    85 F.4th 635 (1st Cir. 2023) ..................................................................... 22

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ 12

*Lujan v. Nat'l Wildlife Fed.*,
  497 U.S. 871 (1990) ....................................................................................... 13, 18, 20

*Markowicz v. Johnson*,
  206 F. Supp. 3d 158 (D.D.C. 2016) ........................................................................ 8

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988) .................................................................................. 6

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
  264 F. Supp. 3d 116 (D.D.C. 2017) ...................................................................... 24

* *Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ............................................................................... 16

*National Treasury Employees Union v. Vought*,
  ---- F.4th ----, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) ............................... 19

* *Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .......................................................................................... 13, 18, 20

*People for Ethical Treatment of Animals ("PETA") v. Dep't of Agric.*,
  797 F.3d 1087 (D.C. Cir. 2015) ............................................................................. 12

*Perry Cap. LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) ............................................................................... 21

*PETA v. Fish & Wildlife Serv.*,
  59 F. Supp. 3d 91 (D.D.C. 2014) ........................................................................... 24

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*,
  43 F. Supp. 3d 28 (D.D.C. 2014) ............................................................................. 8

*Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*,
  486 F.3d 1342 (D.C. Cir. 2007) ............................................................................. 25

* *Richards v. Delta Airlines Inc.*,
  453 F.3d 525 (D.C. Cir. 2006) ......................................................................... 17, 22

*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002) ............................................................................... 13

*Spectrum Leasing Corp. v. United States*,
  764 F.2d 891 (D.C. Cir. 1985) ............................................................................... 17

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ..................................................................................... 25

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ................................................................................... 13

*Talal Al-Zahrani v. Rodriguez,*
  669 F.3d 315 (D.C. Cir. 2012) ................................................................... 25

*Travelers United, Inc. v. Hyatt Hotels Corp.,*
  761 F. Supp. 3d 97 (D.D.C. 2025) ............................................................... 6

*Trudeau v. FTC,*
  456 F.3d 178 (D.C. Cir. 2006) ..................................................................... 7

*\* U.S. Conf. of Catholic Bishops v. Dep't of State,*
  2025 WL 763738 (D.D.C. Mar. 11, 2025) ...................................... 15, 16, 17

*United Bhd. of Carpenters & Joiners v. Operative Plasterers' & Cement Masons' Int'l Ass'n,*
  721 F.3d 678 (D.C.Cir.2013) ..................................................................... 8, 9

*United States v. Texas,*
  599 U.S. 670 (2023) ................................................................................... 11

*Veg-Mix, Inc. v. Dep't of Agric.,*
  832 F.2d 601 (D.C. Cir. 1987) ..................................................................... 8

*Versata Dev. Corp. v. Rea,*
  959 F. Supp. 2d 912 (E.D. Va. 2013) ......................................................... 21

*Vico Prods. Co. v. Nat'l Lab. Rels. Bd.,*
  333 F.3d 198 (D.C. Cir. 2003) ..................................................................... 6

*Vill. of Bald Head Island v. Army Corps. of Eng'rs,*
  714 F.3d 186 (4th Cir. 2013) ..................................................................... 18

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
  435 U.S. 519 (1978) .............................................................................. 22, 23

*Wardrick v. Fed. Bureau of Prisons,*
  Civ. A. No. 19-0184, 2020 WL 1821133 (D.D.C. Apr. 10, 2020) ............... 8

*Wright v. Foreign Serv. Grievance Bd.,*
  503 F. Supp. 2d 163 (D.D.C. 2007) ............................................................. 7

*Yee v. Jewell*,
   228 F. Supp. 3d 48 (D.D.C. 2017) ............................................................. 6

**Statutes**

5 U.S.C. § 702 ........................................................................................... 15, 21, 22

5 U.S.C. § 704 ...................................................................................................... 21

5 U.S.C. § 706(2)(A) ......................................................................................... 5, 6

20 U.S.C. § 3402 ................................................................................................... 2

20 U.S.C. § 9511(b)(2) ......................................................................................... 2

20 U.S.C. § 9512 ................................................................................................. 16

28 U.S.C. § 1491(a)(1) ........................................................................................ 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 7, 8

**Other Authorities**

John Roberts, *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219 (1993) ................... 11

Exec. Order No. 14,222: Implementing the President's "Department of Government Efficiency"
   Cost Efficiency Initiative, 90 Fed. Reg. 11,095 (Feb. 26, 2025) ................................................ 4

Exec. Order No. 14,242: Improving Education Outcomes by Empowering Parents, States, and
   Communities, 90 Fed. Reg. 13,679 (Mar. 20, 2025) ................................................................. 4

Defendants, the Department of Education (the "Department") and Linda McMahon, in her official capacity as Secretary of Education (the "Secretary"), respectfully move to dismiss Plaintiffs' Amended Complaint (ECF No. 31, "Am. Compl.") in full pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiffs, two membership-based associations, ask the Court to micromanage the Department's Institute of Education Sciences (the "Institute"). Plaintiffs bring claims under the Administrative Procedure Act ("APA") seeking to set aside the Institute's termination of contracts under the guise that those decisions may impact the data and information upon which Plaintiffs and their members rely.

As this Court already recognized when it denied Plaintiffs' motion for a preliminary injunction, such judicial micromanagement is an overreach without legal basis. Permitting these claims to proceed would entangle the Court in judicial review, eliminating discretion entrusted to the Secretary to run the Department's day-to-day operations. Instead of the Executive Branch faithfully executing the laws of Congress, substantial aspects of a cabinet-level agency's operations would instead be put under the control of this Court.

This Court should dismiss the Amended Complaint in full for several independent reasons. First, the Court should dismiss this case for lack of subject-matter jurisdiction because (i) Plaintiffs lack Article III standing, and (ii) Plaintiffs' contract claims cannot be brought in this Court under the Tucker Act. *See* Fed. R. Civ. P. 12(b)(1). Second, the Court should dismiss this case for failure to state a claim because (i) Plaintiffs fail to challenge any discrete agency action, and (ii) how the Department performs its statutory obligations is committed to sound agency discretion. *See* Fed. R. Civ. P. 12(b)(6). Defendants respectfully request the Court grant this motion and dismiss this case in its entirety.

## BACKGROUND

### I.    Statutory Background

The Department was established as part of the Department of Education Organization Act.

Pub. L. No. 96-88, 93 Stat. 668 (1979). The purpose of the Department is principally

> (1) to strengthen the Federal commitment to ensuring access to equal educational opportunity for every individual; (2) to supplement and complement the efforts of States, the local school systems and other instrumentalities of the States, the private sector, public and private educational institutions, public and private nonprofit educational research institutions, community-based organizations, parents, and students to improve the quality of education; (3) to encourage the increased involvement of the public, parents, and students in Federal education programs; (4) to promote improvements in the quality and usefulness of education through federally supported research, evaluation, and sharing of information; (5) to improve the coordination of Federal education programs; (6) to improve the management and efficiency of Federal education activities, especially with respect to the process, procedures, and administrative structures for the dispersal of Federal funds, as well as the reduction of unnecessary and duplicative burdens and constraints, including unnecessary paperwork, on the recipients of Federal funds; and (7) to increase the accountability of Federal education programs to the President, the Congress, and the public.

20 U.S.C. § 3402.

Under the Education Sciences Reform Act, 20 U.S.C. §§ 9501-9584 (the "Act"), Congress

established an Institute of Education Sciences (the "Institute") within the Department to:

> compile statistics, develop products, and conduct research, evaluations, and wide dissemination activities in areas of demonstrated national need (including in technology areas) that are supported by Federal funds appropriated to the Institute and ensure that such activities-- (A) conform to high standards of quality, integrity, and accuracy; and (B) are objective, secular, neutral, and nonideological and are free of partisan political influence and racial, cultural, gender, or regional bias.

20 U.S.C. § 9511(b)(2). The Act also established within the Institute four centers: the National

Center for Education Research, the National Center for Education Statistics, the National Center

for Education Evaluation and Regional Assistance, and the National Center for Special Education

Research and delineated the duties for each center. *Id.* §§ 9511–9567.

- 2 -

Additionally, the Act states that the Institute shall "[d]isseminat[e] information in a timely fashion and in formats that are easily accessible and usable by researchers, practitioners, and the general public" and "[u]tiliz[e] the most modern technology and other methods available, including arrangements to use data collected electronically by States and local educational agencies, to ensure the efficient collection and timely distribution of information, including data and reports," and "[m]ak[e] information available to the public in an expeditious fashion." *Id.* § 9575(2), (3), (6). Moreover, "data collected by the Institute, including any office, board, committee, or center of the Institute, in carrying out the priorities and mission of the Institute, shall be made available to the public, including through use of the Internet." *Id.* § 9574.

## II.    <u>Factual Background</u>

On February 26, 2025, the President signed the "Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative" Executive Order. Exec. Order No. 14,222, 90 Fed. Reg. 11,095 (Feb. 26, 2025) (the "Contract Executive Order"). The purpose of the order was to "commence[] a transformation in Federal spending on contracts, grants, and loans to ensure Government spending is transparent and Government employees are accountable to the American public." *Id.* § 1. Accordingly, this Executive Order instructed "[e]ach Agency Head, in consultation with the agency's DOGE Team Lead, [to] review all existing covered contracts and grants and, where appropriate and consistent with applicable law," "terminate or modify (including through renegotiation) such covered contracts and grants to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of [the President's] Administration." *Id.* § 3(b). Covered contracts are defined as, among other things, "discretionary spending through Federal contracts," but excludes "direct assistance to individuals; expenditures related to immigration enforcement, law enforcement, the military, public safety, and the intelligence community; and other critical, acute, or emergency spending, as determined by the

- 3 -

relevant Agency Head." *Id.* § 2(d). The Contract Executive Order instructed the process to "commence immediately" and to "prioritize the review of funds disbursed under covered contracts and grants to educational institutions . . . for waste, fraud, and abuse." *Id.*

On March 20, 2025, President Trump signed the Executive Order entitled "Improving Education Outcomes by Empowering Parents, States, and Communities[.]"  Exec. Order No. 14,242, 90 Fed. Reg. 13,679 (Mar. 20, 2025) (the "Department Executive Order"). The Department Executive Order found that the "Department of Education has entrenched the education bureaucracy" that "is not working." *Id.* § 1. For example, the Order identified the Department's "public relations office that includes over 80 staffers at a cost of more than $10 million per year." *Id.* Ultimately, the Order contemplates that the "[c]losure of the Department of Education would drastically improve program implementation in higher education" and "would provide children and their families the opportunity to escape a system that is failing them." *Id.*

Under the Department Executive Order, the Secretary of Education was ordered "to the maximum extent appropriate and permitted by law, take all necessary steps to facilitate the closure of the Department of Education." Exec. Order No. 14,242 § 2(a), 90 Fed. Reg. at 13,679. The "Secretary of Education shall ensure that the allocation of any Federal Department of Education funds is subject to rigorous compliance with Federal law." *Id.* § 2(b). And the Department Executive Order states that it should "be implemented consistent with applicable law and subject to the availability of appropriations." *Id.* § 3(b). Accordingly, the Secretary has stated she intends to do "an overhaul" of the Department. U.S. Dep't of Educ., *Secretary McMahon: Our Department's Final Mission* (Mar. 3, 2025), https://www.ed.gov/about/news/speech/secretary-mcmahon-our-departments-final-mission ("Mar. 3, 2025, Speech") (last visited Sep. 18, 2025).

III.    <u>**Procedural Background**</u>

On April 24, 2025, Plaintiffs brought a five-count complaint alleging violations of the Administrative Procedure Act ("APA"), and various constitutional claims.  Compl. (ECF No. 1) ¶¶ 108-35.  On May 2, 2025, Plaintiffs moved for a preliminary injunction generally seeking to reinstate Institute employees, programs, and contracts to their pre-February 9, 2025, status.  Pls.' Mot. for Prelim. Inj. (ECF No. 14) at 2.  On June 3, 2025, the Court denied that motion, concluding Plaintiffs were unlikely to succeed on the merits of their claims.  Mem. Op. (ECF No. 27) at 26-27.

Thereafter, on July 21, 2025, Plaintiffs filed an Amended Complaint.  Am. Compl. (ECF No. 31).  Plaintiffs Amended Complaint challenges the Institute's decision to cancel contracts associated with the collection and dissemination of data for certain datasets.  *Id*. ¶¶ 30-119. According to Plaintiffs, those actions are causing them and their members irreparable harm.  *Id*. ¶¶ 120-136.  Plaintiffs raise eleven claims.  Counts I through X allege that the cancellation of contracts associated with each study was arbitrary and capricious in violation of the APA, 5 U.S.C. § 706(2)(A):

(1)    Count I: National Assessment of Educational Process, *id*. ¶¶ 34-45, 137-45;

(2)    Count II: Common Core of Data, *id.* ¶¶ 46-52, 146-54;

(3)    Count III: National Postsecondary Student Aid Study, *id.* ¶¶ 53-63, 155-63;

(4)    Count IV: Integrated Postsecondary Education Data System, *id.* ¶¶ 64-69, 164-72;

(5)    Count V: Early Childhood Longitudinal Studies-Kindergarten, *id.* ¶¶ 70-80, 173-81;

(6)    Count VI: High School Longitudinal Study, *id.* ¶¶ 81-87, 182-90;

(7)    Count VII: Baccalaureate and Beyond Longitudinal Study, *id.* ¶¶88-92; 191-99;

(8)    Count VIII: Beginning Postsecondary Students, *id.* ¶¶ 93-99, 200-08;

(9)    Count IX: National Household Education Survey, *id.* ¶¶ 100-09, 209-17; and

(10)    Count X: Trends in International Mathematics and Science Study, *id.* ¶¶ 110-19; 218-26.

Count XI alleges the Department's decision to "cease [the National Assessment of Educational Progress]-collection activities is contrary to law," also in violation of § 706(2)(A). *Id.* ¶ 229. Accordingly, Plaintiffs request the Court require Defendants to resume each study. *Id.* at 44-45.

## LEGAL STANDARDS

"One necessary condition for a case to come within this Court's limited subject-matter jurisdiction is that the plaintiff must have standing to pursue the case in federal court." *Travelers United, Inc. v. Hyatt Hotels Corp.*, 761 F. Supp. 3d 97, 109 (D.D.C. 2025) (citing *Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017)). Additionally, "[t]he question of whether the United States has waived its sovereign immunity against suit[] . . . is, in the first instance, a question of subject matter jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Yee v. Jewell*, 228 F. Supp. 3d 48, 53 (D.D.C. 2017) (subject matter jurisdiction turns on whether "Congress has waived the United States' immunity to suit").

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1). To determine whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Vico Prods. Co. v. Nat'l Lab. Rels. Bd.*, 333 F.3d 198, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

It is the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to

dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear

closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to

state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007)

(internal citations and quotation marks omitted). A court need not accept as true "a legal conclusion

couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint."

*Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks

omitted).

A motion under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  While detailed factual allegations are

not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more

than labels or conclusions" or "a formulaic" recitation of the elements of a cause of action." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible only when a plaintiff pleads factual content that enables the

Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. While the Court must assume that any "well-pleaded factual allegations"

in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth."

*Id.* at 679.  Further, the Court "need not accept inferences drawn by the plaintiff if such inferences

are unsupported by the facts set out in the complaint. Moreover, the court is not bound to accept

as true a legal conclusion couched as a factual allegation." *Jack's Canoes & Kayaks, LLC v. Nat'l*

*Park Serv.*, 937 F. Supp. 2d 18, 27 (D.D.C. 2013) (internal quotation marks and citations omitted).

A complaint that "pleads facts that are merely consistent with a defendant's liability, [] stops short

of the line between possibility and plausibility of entitlement to relief," and is insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In considering a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Wardrick v. Fed. Bureau of Prisons*, Civ. A. No. 19-0184, 2020 WL 1821133, at *4 (D.D.C. Apr. 10, 2020) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). In particular, the Court may take judicial notice of information posted on official public websites of government agencies, *see, e.g., Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (citing *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)))), as well as court records, *Veg-Mix, Inc. v. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987) (holding that "[c]ourts may take judicial notice of official court records").

## ARGUMENT

## I.    The Court Should Dismiss the Amended Complaint for Lack of Subject-Matter Jurisdiction.

### A.    Several of the Plaintiffs' Claims Are Moot.

"'Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies.'" *Daimler Trucks N. Am. LLC v. EPA*, 745 F.3d 1212, 1216 (D.C. Cir. 2013) (quoting *United Bhd. of Carpenters & Joiners v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 687 (D.C.Cir.2013)). "Courts 'may not decide questions that cannot

affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'"  *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). "Moreover, the case 'must remain live 'at all stages of review, not merely at the time the complaint is filed.'"  *Id.* (quoting *United Bhd. of Carpenters*, 721 F.3d at 687).  A federal court should not decide a case "'if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Id.* (quoting *LaRoque v. Holder*, 679 F.3d 905, 907 (D.C. Cir. 2012)).  Here, Plaintiffs seek a court order to enjoining the Department "from hindering the collection, maintenance, analysis, and dissemination" of ten named studies.  Am. Compl. (ECF No. 31) ¶¶ 232-41.  Contracts for the following studies, however, have been rescoped, recompeted, renegotiated, or otherwise remain in effect.

(1)     **National Assessment for Education Progress (Counts I & XI)**. Plaintiffs allege that the Department "has taken several actions to disrupt the collection, maintenance analysis, and dissemination of NAEP data[.]"  Am. Compl. (ECF No. 31) ¶ 42.  Contract 91990025C0001, however, was never terminated and work on the National Assessment is ongoing.  *See* https://www.usaspending.gov/award/CONT_AWD_91990025C0001_9100_-NONE-_-NONE- (last visited Sep. 18, 2025).  Numerous additional, ongoing contracts valued in the hundreds of millions of dollars also support this program.  *See*, *e.g.*, https://www.usaspending.gov/award/ CONT_AWD_91990025C0002_9100_-NONE-_-NONE- (91990025C0002) (last visited Sep. 18, 2025);     https://www.usaspending.gov/award/CONT_AWD_91990025C0003_9100_-NONE-_- NONE- (91990025C0003) (last visited Sep. 18, 2025);  https://www.usaspending.gov/award/ CONT_AWD_91990025C0004_9100_-NONE-_-NONE- (91990025C0004) (last visited Sep. 18, 2025);     https://www.usaspending.gov/award/CONT_AWD_91990025C0005_9100_-NONE-_-

NONE- (91990025C0005) (last visited Sep. 18, 2025); https://www.usaspending.gov/award/
CONT_AWD_91990025C0006_9100_-NONE-_-NONE- (91990025C0006) (last visited Sep. 18,
2025); https://www.usaspending.gov/award/CONT_AWD_91990025C0008_9100_-NONE-_-
NONE- (91990025C0008) (last visited Sep. 18, 2025); https://www.usaspending.gov/award/
CONT_AWD_91990025F0002_9100_GS35F0329Y_4732 (91990025F0002) (last visited Sep.
18, 2025).

(2)     **Common Core of Data (Count II)**.  Plaintiffs allege that the Department canceled
contract "91990023D0008/91990024F0331."  Am. Compl. (ECF No. 31) ¶ 51.  Both contacts are
current.     *See*    https://www.usaspending.gov/award/CONT_IDV_91990023D0008_9100
(91990023D0008)   (last   visited   Sep.   18,   2025);     https://www.usaspending.gov/award/
CONT_AWD_91990024F0331_9100_91990023D0008_9100 (91990024F0331) (last visited Sep.
18, 2025).

(3)     **National Postsecondary Student Aid Study (Count III)**: Plaintiffs allege that
"the     Department     cancelled     Contracts     91990018C0039,     91990022C0017,     and
91990023D0005/91990024F033[.]"  Am. Compl. (ECF No. 31) ¶ 60.  Those contracts were either
completed,   *see*   https://www.usaspending.gov/award/CONT_AWD_91990018C0039_9100_-
NONE-_-NONE- (91990018C0039) (last visited Sep. 18, 2025), or are open or ongoing, see
https://www.usaspending.gov/award/CONT_AWD_91990022C0017_9100_-NONE-_-NONE-
(91990022C0017)   (last   visited   Sep.   18,   2025);     https://www.usaspending.gov/award/
CONT_IDV_91990023D0005_9100 (91990023D0005) (last visited Sep. 18, 2025).

(4)     **Integrated Postsecondary Educational Data System (Count IV)**. The contract
for  this  program  was  renegotiated  and  continues.     https://www.usaspending.gov/award/
CONT_AWD_91990022F0021_9100_GS00Q14OADU217_4732 (last visited Sep. 18, 2025).

(5)    **Beginning Postsecondary Students (Count VIII)**: Plaintiffs allege that "the Department cancelled Contracts 91990018C0039, 91990022C0017, and 91990023D0005/91990024F033[.]" Am. Compl. (ECF No. 31) ¶ 98.  Those contracts were either completed, *see* https://www.usaspending.gov/award/CONT_AWD_91990018C0039_9100_-NONE-_-NONE- (91990018C0039) (last visited Sep. 18, 2025), or are open or ongoing, *see* https://www.usaspending.gov/award/CONT_AWD_91990022C0017_9100_-NONE-_-NONE- (91990022C0017) (last visited Sep. 18, 2025); https://www.usaspending.gov/award/ CONT_IDV_91990023D0005_9100 (91990023D0005) (last visited Sep. 18, 2025).

Because work on these programs continues, there is no "actual, ongoing controvers[y]" for the Court to resolve and the Court should dismiss Counts I, II, III, IV, VIII, and XI as moot. *Daimler Trucks*, 745 F.3d at 1216.

## B.    Plaintiffs Lack Standing.

Standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023).  It requires that a plaintiff "possess a personal stake" in the outcome, which "helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024).  Standing doctrine thus "serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action." *Id.* at 379–80.  The standing doctrine further ensures that "'the Framers' concept of the proper—and properly limited—role of the courts in a democratic society' is vindicated, by ensuring decisions meant for the political process are left to the political process." *Coal. for Humane Immigrant Rts. v. Dep't of Homeland Sec.*, Civ. A. No. 25-0943 (TNM), 2025 WL 1078776, at *4 (D.D.C. Apr. 10, 2025) (quoting John Roberts, *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1220 (1993)).

Under any theory of standing, "the irreducible constitutional minimum" requires that, (1) the plaintiff have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Animals v. Jewell*, 828 F.3d 989, 991–92 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Plaintiffs can demonstrate standing through informational standing. *FEC v. Akins*, 524 U.S. 11, 25 (1998). Membership-based associations, like Plaintiffs, can also establish standing through "organizational standing" to sue on behalf of themselves, *see People for Ethical Treatment of Animals ("PETA") v. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015), or "associational standing" to sue on behalf of their members, *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs here fail to sufficiently allege any kind of standing.

### 1.     Plaintiffs Fail to Demonstrate Informational Standing.

To show informational standing, Plaintiffs have the burden of proving two elements: "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals*, 828 F.3d at 992 (cleaned up). Nonetheless, "[a]ny informational injury still must meet the traceability and redressability prongs of the traditional standing analysis." *Architects & Eng'rs for 9/11 Truth v. Raimondo*, Civ. A. No. 21-2365 (TNM), 2022 WL 3042181, at *3 (D.D.C. Aug. 2, 2022) (citing *Akins*, 524 U.S. at 25), *aff'd*, No. 22-5267, 2023 WL 6439491 (D.C. Cir. Oct. 3, 2023).

Here, Plaintiffs fail to sufficiently allege any informational standing. Plaintiffs have not alleged they currently lack access to the data or information that they seek from the Institute. As

to all the studies whose contracts Plaintiffs allege were terminated, Plaintiffs' allegations are grounded in mere speculation that they will not have access to the same or similar data or information in the future. *See* Am. Compl. (ECF No. 31) ¶¶ 130-36. But even if Plaintiffs could show an informational injury from the cancellation of the contracts for the other studies—only one part of the chain they must show for standing—in many cases they cannot connect it to a statutory violation rather than an exercise of proper discretion. Any programmatic decisions regarding the Institute's handling of its statutorily required duties or responsibilities are likewise committed to agency discretion. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). Yet Plaintiffs ask this Court to insert itself into this process, and, in the name of equity, issue a programmatic injunction freezing in place the Institute's programmatic structure. And Plaintiffs ask this Court to do so notwithstanding the Secretary's differing judgment about how the Institute should operate. Having crossed—in Plaintiffs' mind—some threshold for programmatic change that is as unarticulated as it is inarticulable, Plaintiffs ask this Court to step in and manage the Department's day-to-day operations. That is not the law.

### 2.    Plaintiffs Fail to Demonstrate Associational Standing.

Plaintiffs fail to demonstrate associational standing. To show associational standing, an organization must demonstrate that "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

"When a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured." *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011). "Rather, the petitioner must specifically 'identify members who have suffered the requisite harm.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)); *see also Am.*

- 13 -

*Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815, 820 (D.C. Cir. 2006); *Ctr. for Biological Diversity v. Nishida*, Civ. A. No. 21-119 (RDM), 2021 WL 827189, at *2 (D.D.C. Mar. 4, 2021) (finding "[t]he associational-standing doctrine demands more" where organizational plaintiff failed to identify "who specifically will suffer harm–and when, how, or why they will suffer it"); *Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*, 313 F. Supp. 3d 285, 299 (D.D.C. 2018) ("[Plaintiff] fails to identify in its complaint which particular member of the organization has been harmed. . . . In this way, the complaint runs afoul of the baseline requirement to identify a particular member of the organization that was injured.").  Indeed, "at least three courts in this district have required an associational plaintiff to identify an injured member *by name* at the motion to dismiss stage."  *Conf. of State Bank Supervisors*, 313 F. Supp. 3d at 298–99 (emphasis in original; collecting cases).

Here, Plaintiffs' Amended Complaint has failed to identify any specific members who have been allegedly harmed by Defendants' actions. *See generally* Am. Compl (ECF No. 31).  This failure alone subjects Plaintiffs' claims to dismissal.  But even if the Court were to evaluate the standing of the unidentified members, for the reasons stated below that doom their informational and organizational standing, Plaintiffs have failed to show their members have suffered any concrete redressable injury.  As a result, Plaintiffs have failed to allege any associational standing.

### C. The Court Lacks Jurisdiction Over Plaintiffs' Challenge to the Cancellation of the Institute's Contracts.

Insofar as Plaintiffs seek reinstatement of any Institute contracts for any of the Institute studies or programs, the proper course would be for the parties to those contracts to seek appropriate recourse under the terms of the contracts—not for Plaintiffs, as nonparties, to seek such relief through this suit.  Any challenges to the cancellation of the Institute's contracts are not subject to this Court's jurisdiction.  Indeed, in denying Plaintiffs' motion for preliminary injunctive

relief, this Court has already stated: "But the Court would likely lack jurisdiction to hear any individual contract challenge brought by the organizations or their members if it resembled a traditional contract claim." Mem. Op. (ECF No. 27) at 23-24. Plaintiffs' claims are exactly those traditional contract claims that this Court is precluded from reviewing.

Under the Tucker Act, any claim based on "an express or implied contract with the United States" must be brought in the Court of Federal Claims. 28 U.S.C. § 1491(a)(1). The Supreme Court recently reaffirmed this jurisdictional line in *California*:

> The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Nor does the waiver apply to claims seeking "money damages." *Ibid*. True, a district court's jurisdiction "is not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds. *Bowen v. Massachusetts*, 487 U.S. 879, 910, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). But, as we have recognized, the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

*Dep't of Educ. v. California*, 145 S. Ct. 966, 967 (2025); *see also U.S. Conf. of Catholic Bishops v. Dep't of State*, Civ. A. No. 25-0465 (TNM), 2025 WL 763738, at *4 (D.D.C. Mar. 11, 2025) (explaining that the D.C. Circuit has long "interpreted the Tucker Act as providing the exclusive remedy for contract claims against the government" (cleaned up)), *appeal docketed* No. 25-5066 (D.C. Cir.).[1] Since *California*, courts have been reacting by withholding or staying orders that would have required the types of remedies sought here. *See, e.g.*, *Am. Ass'n of Colleges for Teacher Ed., v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025) (granting the Government's motion to stay a preliminary injunction because of *California*); *Mass. Fair Housing Cent. v. Dep't*

---

[1]    On March 28, 2025, the D.C. Circuit denied plaintiffs' motion for an injunction pending appeal and set a schedule for briefing and oral argument for September 2025.

*of Hous. & Urb. Dev.*, Civ. A. No. 25-30041 (D. Mass Apr. 14, 2025) (dissolving temporary restraining order considering the Supreme Court's decision in *California*).

To determine whether an action is "at its essence a contract action," this Court looks at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (cleaned up). In this case, both of those considerations make clear that this Court lacks jurisdiction over any claims challenging the cancellation of the Institute's contracts.

Plaintiffs cannot point to the Act and the APA as sources of the rights to the continuation of the contracts cancelled by the Institute. The Act permits the Institute to perform its delineated functions "directly *or* through grants, contracts, or cooperative agreements." 20 U.S.C. § 9512 (emphasis added). To the extent the Act requires any of the Institute's centers to enter contracts to perform their duties, Plaintiffs provide no suggestion that the Act requires the Institute to maintain the particular contracts that were terminated. Given Plaintiffs chiefly complain about the termination of those specific contracts that were cancelled, the source of Plaintiffs' challenge lies within those specific contracts themselves. Moreover, citation to the APA is irrelevant, as the APA itself will not grant jurisdiction where another statutory scheme, here the Tucker Act, applies. *See Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) ("the Tucker Act impliedly forbids" the bringing of "contract actions" against "the government in a federal district court" under the APA (cleaned up)).

In any event, the latter *Megapulse* factor is dispositive here. *See Megapulse*, 672 F.2d at 968. The nature of relief Plaintiffs seek sounds in contract. *See Conf. of Catholic Bishops*, 2025 WL 763738, at *7-8. True, Plaintiffs frame their prayers for relief in the form of injunctive relief. Am. Compl., Prayer for Relief. "Though framed in terms of declaratory and injunctive relief," a

suit nonetheless can be one that in substance "is for monetary damages." *Richards v. Delta Airlines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006). "No matter how [Plaintiffs] phrase it, what they want is a judicial decree directing [the Institute] to pay" on the contracts. *Id.* at 531. "Yet the rule has long been that a plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money." *Id.* (citation modified). "A court must look past the label applied by the plaintiff to determine if the relief is appropriately framed in equity." *Clark v. Feder Semo & Bard, P.C.*, 527 F. Supp. 2d 112, 117 n.1 (D.D.C. 2007) (citation modified).

Thus, Plaintiffs "seek[] the classic contractual remedy of specific performance." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). But this Court cannot order the Government to continue to perform under a contract as it lacks subject-matter jurisdiction. *Id.* Such a request for an order that the government "must perform" on its contract is one that "must be resolved by the Claims Court." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985); *see also California*, 145 S. Ct. at 967 (the "Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA," and "as we have recognized, the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money[.]'" (citation modified)). Indeed, this Court has already held that it has no jurisdiction to hear a claim by a federal grantee seeking specific performance on a federal grant agreement. *Conf. of Catholic Bishops*, 2025 WL 763738, at **6-7. Citing the D.C. Circuit's ruling in *Ingersoll-Rand Co.*, this Court made this observation: "[t]he Court squints in vain to see any daylight. Like those plaintiffs, the [plaintiff] asks the Court to order the Government to cancel the termination, pay money due, and reinstate the contracts. . . . That is something this Court lacks the power to do." The same is true here.

In sum, this Court lacks jurisdiction over the claims challenging the Departments' cancellation of the contracts for the studies (Counts I-X).

## II.    <u>Plaintiffs Fail To State a Claim Under the APA.</u>

Plaintiffs fail to sufficiently allege any claims under the APA.  First, Plaintiffs ask the Court for a programmatic review, which is impermissible under the APA.  Second, there are adequate alternative remedies available as to any challenges to the termination of contracts, thus precluding Plaintiffs' APA challenges.  Finally, the Department's actions are committed to agency discretion.

### A.    Plaintiffs Seek Impermissible Programmatic Review.

As a threshold matter, Plaintiffs' Amended Complaint still does not identify a discrete and circumscribed agency action that the Department has taken which could specifically be redressed by a federal court.  Plaintiffs must plead "an identifiable action or event" and "direct [their] attack against some particular 'agency action' that causes [them] harm."  *Lujan*, 497 U.S. at 891, 899; *Norton*, 542 U.S. at 62 (APA limits judicial review to "circumscribed, discrete agency actions"). These final agency actions must be "circumscribed [and] discrete."  *Norton*, 542 U.S. at 62.  The APA does not provide for "general judicial review of [an agency's] day-to-day operations," *Lujan*, 497 U.S. at 899, like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013).  The APA thus contains "a prohibition on programmatic challenges," meaning "challenges that seek 'wholesale improvement' of an agency's programs by court decree." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir. 2014) (cleaned up).  "Because 'an on-going program or policy is not, in itself, a final agency action under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior."  *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted).

Indeed, the D.C. Circuit recently affirmed the application of *Lujan* and *Norton* in *National Treasury Employees Union v. Vought*, ---- F.4th ----, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025). In a challenge to the alleged dismantling of the Consumer Financial Protection Bureau (the "Bureau"), the D.C. Circuit affirmed that the "APA does not make federal courts 'roving commissions' assigned to pass on how well federal agencies are satisfying their statutory obligations." *Id.* at *10.  Accordingly, the D.C. Circuit found the Plaintiffs' challenge to the purported shutdown of the Bureau was not agency action as there had been no formal pronouncement of such a shutdown and as a result, Plaintiffs were merely challenging "a constellation of then-ongoing actions—the February 10 email, firing employees, cancelling contracts, declining additional funding, and terminating the lease for the Bureau's current headquarters." *Id.* at **12, 13.  The Court further noted that Plaintiffs' challenge was further prohibited by *Norton* given that it sought "an order compelling the [Bureau] to keep providing its mandatory services," even though the relevant statute "gives the agency 'a great deal of discretion in deciding *how*' to provide them." *Id.* at *13 (emphasis in original).

Plaintiffs' claims (Counts I-XI) and requested relief present exactly the type of wholesale challenge that the APA forbids.  Plaintiffs' allegations reveal they do not seek judicial review of a discrete agency action.   Rather, they seek wholesale judicial review of the Department's management of the Institute's programs.  Instead of presenting the Court with a "narrow question to resolve," *Cobell*, 455 F.3d at 307, Plaintiffs challenge a host of individual actions—the cancellation of Institute contracts on several studies and programs, *see, e.g.*, Am. Compl. (ECF No. 31) ¶ 2 (alleging "the Department has taken numerous actions which curtail its ability to comply with congressional mandates to collect, analyze, and disseminate ten critical datasets related to education").   Moreover, Plaintiffs seek injunctions against the Department "from

hindering the collection, maintenance, analysis, and dissemination" and the "resum[ption]" of each study.  *See id.*, Prayer for Relief.  Addressing this type of claim requires the Court to supervise all agency activities and determine how the agency would accomplish each statutorily-mandated function—an even more extreme kind of supervisory claim than was at issue and rejected in *Lujan*.  *See* 497 U.S. at 892-93.  Such a claim circumvents the purpose of the APA's discrete agency action requirement, which is to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve."  *Norton*, 542 U.S. at 66-67.

Indeed, in denying Plaintiffs' motion for a preliminary injunction, the Court noted "the APA was never meant to be a bureaucratic windbreak insulating agencies from political gales.  It cannot comprehensively undo multifaceted agency transformations wrought by political decisions."  Mem. Op. (ECF No. 27) at 1.  This Court further observed "[i]t is not this Court's place to breathe life back into wide swathes of the Institute's cancelled programs and then monitor the agency's day-to-day statutory compliance; essentially what Plaintiffs seek."  *Id.*  As a result, because Plaintiffs continue to "bundle together broad lists of grievances and seek wholesale modifications to agency operations writ large," *id.* at 2, the Court must reach the same resolution here and dismiss Plaintiffs' Amended Complaint for failure to identify discrete agency actions.  *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) ("Inconsistency is the antithesis of the rule of law. For judges, the most basic principle of jurisprudence is that we must act alike in all cases of like nature," thus noting that under the law-of-the-case doctrine, "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*" (emphasis in original; citation modified)).

**B.    There Are Adequate Alternative Remedies Available.**

Furthermore, there are adequate alternative remedies available to foreclose Plaintiffs' APA challenges to the cancellation of the contracts for certain studies.

Review under the APA is available only where "there is no other adequate remedy in a court." 5 U.S.C. § 704.  The requirement that a plaintiff have "no other adequate remedy in court," *id.*, reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen*, 487 U.S. at 903.  As the D.C. Circuit has observed, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"  *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation omitted). If there exists an alternative adequate judicial remedy, a plaintiff lacks a cause of action under the APA.  *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017); *see also Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 927 (E.D. Va. 2013) (dismissing putative APA claim under Rule 12(b)(6) because decision at issue was not a final agency action and an alternative adequate remedy existed by way of appeal to the Federal Circuit).  As explained above, all of Plaintiffs' challenges to the termination of the contracts for certain studies are at essence contract claims, and therefore, the Court of Federal Claims provides an adequate alternative venue under the Tucker Act.

To the extent Plaintiffs seek the restoration of each canceled contract, such remedy also is precluded as impermissible money damages claim.  The APA does not waive sovereign immunity to a suit for "money damages."  5 U.S.C. § 702; *accord Jibril v. Mayorkas*, 101 F.4th 857, 870 (D.C. Cir. 2024) ("the APA does not authorize suits seeking 'money damages' against the Government").  "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to [a party] are suits for 'money damages,' as that phrase has traditionally been applied."  *Knudson*, 534 U.S. at 210 (quoting

*Bowen*, 487 U.S. at 918-19 (Scalia, J., dissenting)); *accord Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 (D.C. Cir. 2006) (same).  Accordingly, the APA's limited waiver of sovereign immunity does not extend to this suit.  *See* 5 U.S.C. § 702; *Jibril*, 101 F.4th at 870.

**C.    The Department's Programmatic Implementation Decisions Are Committed to Agency Discretion.**

"Judicial review under [the arbitrary and capricious] standard is deferential, and a court may not substitute its own policy judgment for that of the agency."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  Rather, the Court must ensure "that the agency has acted within a zone of reasonableness[.]"  *Id.*  "[T]he standard of review is highly deferential" in determining whether an action is arbitrary and capricious, *Littlefield v. Dep't of Interior*, 85 F.4th 635, 643 (1st Cir. 2023), and agency action regarding reallocation of resources and reorganizing of enforcement priorities after a change in presidential administrations, if reviewable at all, must be afforded highly deferential rational basis review, *cf. Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (noting that, absent a statutory directive to the contrary, an agency has unreviewable "capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way.").  Plaintiffs bear the burden of alleging that these actions are arbitrary and capricious. *City of Olmsted Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 271 (D.C. Cir. 2002) (quotations omitted). Plaintiffs here come nowhere close to meeting their pleading burden.  The Department is required under the executive orders to perform its statutory obligations.  Ultimately, Courts lack the power to "dictat[e] to the agency the methods[] [and] procedures" it uses to complete its statutory obligations.  *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 545 (1978) (quoting *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  To override these principles and enjoin agency leadership from

exercising control over the implementation of any statutorily mandated programs would be an extraordinary violation of the separation of powers.

"In determining whether a matter has been committed solely to agency discretion, [courts] consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002). Here, each factor shows that Defendants' managerial decisions are committed to agency discretion.

First, decisions on how to implement a program fit neatly among those "categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln*, 508 U.S. at 191-92 (citation omitted). After all, the point of the Department's actions is to improve efficiency, which allows the Department to "meet its statutory responsibilities in what [the new administration] sees as the most effective or desirable way." *Lincoln*, 508 U.S. at 192. Similarly, "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). The decisions on program implementation reflect the Administration's effort to realign the Department to provide better service to the American people. "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id*. at 831-32.

Second, Plaintiffs cannot point to a particular statute limiting the Department's inherent discretion to maintain the same contracts as before. Again, agencies generally have broad discretion to determine how to implement a statute. *See Vt. Yankee*, 435 U.S. at 543.

But even if this Court were to conclude that the Department's explanations for cancelling contracts is insufficient to withstand judicial review, that would in no way justify the injunctive

relief that Plaintiffs seek.  *See* Am. Compl. (ECF No. 31) Prayer for Relief (seeking relief to enjoin Defendants to resume studies).  Rather, "the proper course" would be "to remand to the [Department] for additional . . . explanation," not issue any type of injunction.  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

### III. Defendants Should Be Relieved of Their Obligation to File a Certified List of the Administrative Record and Serve the Administrative Record Simultaneously with <u>this Motion.</u>

Defendants should be excused from Local Civil Rule 7(n)(1)'s requirement that Defendants file a certified list of an administrative record and serve an administrative record simultaneously with this dispositive motion.  Pursuant to Local Rule 7(m), counsel for Defendants conferred with counsel for Plaintiffs about this requested relief.  Plaintiffs oppose.

An administrative record is not necessary to resolve this motion, which argues that judicial review is not available in this case—a threshold legal issue that does not require review of the administrative record. Moreover, even if judicial review were available, Defendants have moved to dismiss by relying entirely on the facts alleged in the Amended Complaint or facts upon which the Court make take judicial notice.

Indeed, courts in this district routinely grant the government's requests to defer the filing of a certified list of the contents of the administrative record when it is unnecessary in deciding a dispositive motion.  *See, e.g.*, *Connecticut v. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (Court granted Federal Defendants' motion to waive compliance with Local Civil Rule 7(n) because the Court did not need to consider the administrative record in evaluating the motions before it); *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) (same); *Carroll v. Office of Fed. Contract Compliance Programs*, 235 F. Supp. 3d 79, 81 n.1 (D.D.C. 2017); *PETA v. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014) (waiving compliance with Local Civil Rule 7(n) and dismissing complaint).

Further, this Court should determine whether it has jurisdiction over this case before requiring Defendants to compile and certify the administrative record. The Court must determine that it has jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.") (citation omitted); *see also Talal Al-Zahrani v. Rodriguez*, 669 F.3d 315, 318 (D.C. Cir. 2012) ("Because a federal court without jurisdiction cannot perform a law-declaring function in a controversy, 'the Supreme Court [has] held "that Article III jurisdiction is always an antecedent question" to be answered prior to any merits inquiry.'" (quoting *Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*, 486 F.3d 1342, 1346 (D.C. Cir. 2007))); *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) ("this Circuit treats prudential standing as a jurisdictional issue which cannot be waived or conceded" (citations and quotations omitted)). Thus, the Court must first determine whether it has jurisdiction given that Defendants have demonstrated in the first instance that no judicial review is available here.

As a result, excusing Defendants from Local Civil Rule 7(n)'s requirements at this juncture would promote judicial economy and conserve resources.

*     *     *

**CONCLUSION**

For these reasons, Plaintiffs' Second Amended Complaint should be dismissed. Defendants should also be relieved of their obligation to file a certified list of the administrative record and serve the administrative record simultaneously with their Motion to Dismiss.

Dated: September 18, 2025                    Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By:  _____/s/ Dimitar P. Georgiev_____
    DIMITAR P. GEORGIEV, D.C. Bar #1735756
    ERIKA OBLEA, D.C. Bar #1034393
    Assistant United States Attorneys
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2500 (main)
    dimitar.georgiev-remmel@usdoj.gov
    Erika.oblea@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ACADEMY OF EDUCATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-1266 (TNM) |
| DEPARTMENT OF EDUCATION, et al., | |
| Defendants. | |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion to dismiss, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that the Amended Complaint is DISMISSED.


SO ORDERED:


_____                    _____
Date                                                              TREVOR N. MCFADDEN
                                                                     United States District Judge