UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL ACADEMY OF EDUCATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF EDUCATION, et al., <br><br> Defendants. | Civil Action No. 25-1266 (TNM) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND MOTION FOR RELIEF FROM LOCAL RULE 7(N)(1)'S REQUIREMENTS**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 3

    I.     Several of Plaintiffs' Claims Are Moot ................................................................. 3

    II.    Plaintiffs Lack Standing As To All Claims .......................................................... 5

          A.     Plaintiffs Fail to Demonstrate Informational Standing on Behalf of Themselves or Their Members Regarding Any Alleged Lack of Access to Information ................................................................................................. 5

          B.     Plaintiffs Fail to Demonstrate Associational Standing ............................... 7

    III.   The Court Lacks Jurisdiction Over Plaintiffs' Challenge to the Cancellation of the Institute's Contracts ................................................................................................. 7

    IV.   Plaintiffs Fail to Sufficiently Allege Claims Under the APA ............................... 8

          A.     Plaintiffs Do Not Seek to Compel Agency Action Unlawfully Withheld or Unreasonably Delayed ................................................................................. 9

          B.     Plaintiffs Do Not Seek Judicial Review of a Discrete Agency Action ....... 9

          C.     There Are Adequate Alternative Remedies Available ............................. 10

          D.     The Department's Programmatic Implementation Decisions Are Committed to Agency Discretion ............................................................. 11

    V.    Defendants Should Be Relieved of Their Obligation to File a Certified List of the Administrative Record and Serve the Administrative Record Simultaneously with this Motion ............................................................................................................ 13

Conclusion ........................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) ................................................................................................................14

*Cannon v. Dist. of Columbia*,
  717 F.3d 200 (D.C. Cir. 2013) ................................................................................................13

*Chamber of Com. of U.S. v. EPA*,
  642 F.3d 192 (D.C. Cir. 2011) ..................................................................................................7

*Coal. for Underground Expansion v. Mineta*,
  333 F.3d 193 (D.C. Cir. 2003) ................................................................................................14

*Columbus Reg'l Hosp. v. United States*,
  990 F.3d 1330 (Fed. Cir. 2021) ...............................................................................................11

*Cross v. EEOC*,
  --- F. Supp. 3d ---, 2025 WL 3280764 (D.D.C. Nov. 25, 2025) ............................................6, 7

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ..................................................................................................................7

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  878 F.3d 371 (D.C. Cir. 2017) ..............................................................................................6, 7

*Elec. Priv. Info. Ctr. v. FAA*,
  892 F.3d 1249 (D.C. Cir. 2018) ................................................................................................6

*Hurd v. District of Columbia*,
  864 F.3d 671 (D.C. Cir. 2017) ................................................................................................14

*Ingersoll-Rand Co. v. United States*,
  780 F.2d 74 (D.C. Cir. 1985) ..................................................................................................11

*Johnson v. District of Columbia*,
  49 F. Supp. 3d 115 (D.D.C. 2014) ............................................................................................5

*Kingman Park Civic Ass'n v. Gray*,
  27 F. Supp. 3d 142 (D.D.C. 2014) .......................................................................................3, 8

*LaShawn A. v. Barry*,
  87 F.3d 1389 (D.C. Cir. 1996) ................................................................................................10

*Lincoln v. Virgil*,
    508 U.S. 182 (1993) ...................................................................................................12

*Lujan v. Nat'l Wildlife Fed.*,
    497 U.S. 871 (1990) ...................................................................................................10

*Markowicz v. Johnson*,
    206 F. Supp. 3d 158 (D.D.C. 2016) ...........................................................................11

*Mashpee Wampanoag Tribal Council v. Norton*,
    336 F.3d 1094 (D.C. Cir. 2003) ...................................................................................9

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) .................................................................................7, 8

*Nat'l Treasury Emps. Union ("NTEU") v. Vought*,
    149 F.4th 762 (D.C. Cir. 2025) ....................................................................................1

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) .................................................................................................9, 10

*Palisades Gen. Hosp. Inc. v. Leavitt*,
    426 F.3d 400 (D.C. Cir. 2005) ...............................................................................12, 13

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*,
    43 F. Supp. 3d 28 (D.D.C. 2014) ..........................................................................11, 13

*PPG Indus., Inc. v. United States*,
    52 F.3d 363 (D.C. Cir. 1995) .....................................................................................13

*Public Citizen, Inc. v. FERC*,
    92 F.4th 1124 (D.C. Cir. 2024) .................................................................................4, 5

*Samma v. Dep't of Defense*,
    136 F.4th 1108 (D.C. Cir. 2025) ..................................................................................4

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ...................................................................................12

*U.S. Conf. of Cath. Bishops v. Dep't of State*,
    770 F. Supp. 3d 155 (D.D.C. 2025) .............................................................................5

*United States v. Texas*,
    599 U.S. 670 (2023) .....................................................................................................6

*Vico Prods. Co. v. Nat'l Lab. Rels. Bd.*,
   333 F.3d 198 (D.C. Cir. 2003) ........................................................................................ 14

**Statutes**

5 U.S.C. § 706(1) .............................................................................................................. 2, 3, 6, 9

5 U.S.C. § 706(2)(a) ..................................................................................................................... 2

Defendants Linda McMahon, in her official capacity as Secretary of Education (the "Secretary"), and the Department of Education (the "Department"), respectfully file this reply in further support of their motion to dismiss Plaintiffs' Amended Complaint (ECF No. 31, "Am. Compl.") in full pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and in further support of their motion to be excused from Local Civil Rule 7(n)'s requirements ("Motion" or "Mot.," ECF No. 32).

## INTRODUCTION

"[T]he APA does not make federal courts 'roving commissions' assigned to pass on how well federal agencies are satisfying their statutory obligations." *Nat'l Treasury Emps. Union ("NTEU") v. Vought*, 149 F.4th 762, 780-81 (D.C. Cir. 2025).  This Court denied Plaintiffs' motion for a preliminary injunction on that basis. *See* Mem. Op. (ECF No. 27).  So, Plaintiffs filed an Amended Complaint with a seemingly narrower focus: Defendants' purported cancellation of various contracts related to enumerated Institute of Education Sciences studies.  Now that Defendants have pointed out that many of the contracts are not cancelled, and that the Tucker Act divests this Court of jurisdiction to hear contract-based claims, Plaintiffs try another tack.  In their response, they disclaim any reliance on contract status.  Instead, they purport to challenge Defendants' "failure to comply . . . with statutory mandates" by not taking certain steps.  Opp'n to Mot. ("Opp'n," ECF No. 33) at 26.  But that is either (i) the same type of programmatic challenge this Court already rejected, or (ii) a claim to compel agency action unlawfully withheld that appears nowhere in the Amended Complaint.  Either way, Plaintiffs' shifting positions confirm that the Court should dismiss the Amended Complaint in full.

To start, Plaintiffs cannot re-amend the Amended Complaint during briefing on Defendants' motion to dismiss.  And Plaintiffs' claims (as articulated in the Amended Complaint) rest primarily, and in some instances exclusively, on contract cancellations.  Indeed, six of the

claims are moot because the purportedly cancelled contracts at issue are not, in fact, cancelled. As to all claims, Plaintiffs fail to demonstrate any non-speculative harms as required to establish standing. And because the claims challenge the termination of contracts, the Tucker Act divests this Court of jurisdiction.

Even if the Court were to accept Plaintiffs' improper reformulation of their claims, those claims would fail. If Plaintiffs are not challenging cancelled contracts, what final agency action *are* they challenging? To the extent Plaintiffs purport to challenge *in*action by Defendants, they have not asked the court to "compel agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). Nor have they explained how they could satisfy the standard that applies to such claims. And Plaintiffs have not identified any final, discrete agency action for this Court's review under 5 U.S.C. § 706(2)(a).

Ultimately, despite listing some specific contracts and studies, Plaintiffs repeat their mistake of "bundling together a collection of discrete actions, presenting them as facets of a single event, and then challenging that event instead of the individual actions." Mem. Op. (ECF No. 27) at 11.[1] Any choices about how to best implement any programs are within the Executive's discretion and not subject to APA review. And because Plaintiffs' Amended Complaint fails at the threshold, Defendants should not be required to produce, nor should the Court be burdened with the submission of, an administrative record pending the Court's consideration of the motion to dismiss.

---

[1] All citations are to the ECF-generated page numbers.

**ARGUMENT**

**I.    Several of Plaintiffs' Claims Are Moot.**

Counts I, II, III, IV, VIII, and XI are moot because contracts for the pertinent studies have been rescoped, recompeted, renegotiated, or otherwise remain in effect.  *See* Mot. 8-11.

Plaintiffs' main argument to the contrary mischaracterizes the amended complaint. Plaintiffs assert that their claims challenge Defendants' "ongoing compliance with [their] statutory duties," not the "cancellation of contracts."  Opp'n at 13-14.  But "it is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 (D.D.C. 2014).  Counts I, II, III, IV, and VIII expressly rely on "Defendants' decision not to fund the operation of [the studies], *through the cancellation of contracts* and failure to allocate other operational funding."  Am. Compl. (ECF No. 31) ¶ 139 (emphasis added); *see also id.* ¶¶ 148, 157, 166, 202.[2]  Indeed, as to Counts II (Common Core of Data), III (National Postsecondary Student Aid Study), IV (Integrated Postsecondary Educational Data System), and VIII (Beginning Postsecondary Students), the *only* specific allegation of *any* disruptive agency action is purported contract cancellation.  *See id.* ¶¶ 51, 60, 68, 98.  Plaintiffs also seek to rely on Defendants' alleged failure to perform "implementation activities."  Opp'n (ECF No. 33) at 14.  But Plaintiffs have not asserted claims to "compel agency action unlawfully withheld" under the APA.  5 U.S.C. § 706(1); *see also* Mem. Op. (ECF No. 27) at 18 (distinguishing a "mandamus case involving an attempt to compel agency action under the APA").  So, to avoid mootness, Plaintiffs "must focus on specific agency actions" that present a live controversy.  Mem. Op. (ECF No. 27) at 1.

---

[2]    Count XI does not mention any specific agency action, but appears to refer back to Count I's discussion of purported contract cancellations with respect to the National Assessment of Educational Programs (NAEP).  *See* Am. Compl. (ECF No. 31) ¶ 229.

All Plaintiffs can muster is a "stop order" (as to Counts I and XI only) that cannot save those claims from mootness, either. Opp'n (ECF No. 33) at 14. Counts I and XI purport to target Defendants' alleged "decision to cease NEAP-collection activities." Am. Compl. (ECF No. 31 ¶ 140). The passing allegation of a bare "stop order" for certain persons who perform NEAP assessment review, without meaningful explanation, does not support the existence of a live controversy as to NEAP collection entirely. *See id.* ¶ 43. When it comes to mootness no less than the merits, Plaintiffs cannot "bundl[e] together a collection of discrete actions, presenting them as facets of a single event" to save their claims. *Cf.* Mem. Op. (ECF No. 27) at 11.[3]

Plaintiffs' alternative mootness arguments fare no better. For example, Plaintiffs object to Defendants' reliance on USAspending.gov data to show the status of various contracts. *See* Opp'n (ECF No. 33) at 13. But Plaintiffs do not dispute the actual status of those contracts, which they instead minimize as irrelevant.

Nor does the "voluntary cessation" exception to mootness apply. *See* Opp'n (ECF No. 33) at 15-18. Plaintiffs misunderstand the exception, which "does not apply automatically whenever the prospect of mootness is raised by a party's voluntary conduct," but rather applies only when the facts "suggest . . . arguable manipulation of [a court's] jurisdiction." *Public Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (internal quotation marks omitted). In other words, the "heavy burden" that Plaintiffs seek to impose on Defendants, Opp'n (ECF No. 33) at 15, applies "only if there is some evidence that the party sought to manipulate the court's jurisdiction," *Samma v. Dep't of Defense*, 136 F.4th 1108, 1114 (D.C. Cir. 2025).

---

[3] In any event, neither the amended complaint nor Plaintiffs' response explains how the stop order alone violates the APA. *See* Mem. Op. (ECF No. 27) at 17 (rejecting claim to termination of remote access program because it was not brought "as a standalone challenge").

Plaintiffs do not argue that Defendants are trying to manipulate this Court's jurisdiction. So any such argument is forfeited. *See, e.g.*, *Johnson v. District of Columbia*, 49 F. Supp. 3d 115, 121 (D.D.C. 2014). Because Plaintiffs have raised no "plausible argument that the agency [acted] to manipulate the judicial process," the voluntary cessation exception does not apply, and the Court need not reach Plaintiffs' additional arguments in favor of applying the exception. *Public Citizen*, 92 F.4th at 1130.[4]

## II. Plaintiffs Lack Standing As To All Claims.

Because Plaintiffs fail to allege informational standing or associational standing, the Court should dismiss the Amended Complaint in full.[5]

### A. Plaintiffs Fail to Demonstrate Informational Standing on Behalf of Themselves or Their Members Regarding Any Alleged Lack of Access to Information.

Plaintiffs rely on informational standing. *See* Opp'n (ECF No. 33) at 27-31. But Plaintiffs and their members' alleged informational injuries are rooted in their allegations that certain studies have been terminated. *See* Opp'n (ECF No. 33) at 19. Plaintiffs and their members assume that they will never obtain the same or similar information or data from those studies or have restricted-use data license applications processed. *See* Am. Compl. ¶¶ 30-136. As noted, contracts for many of the studies Plaintiffs' identify have been rescoped, recompeted, renegotiated, or otherwise

---

[4] To be clear, the voluntary cessation arguments that Plaintiffs *do* raise are meritless. Plaintiffs primarily assert "that the contracts can be cancelled at any time." Opp'n (ECF No. 33) at 18. That logic would apply to a staggering number of government contracts. Courts do not issue advisory opinions about what "can" happen in that broad sense.

[5] Plaintiffs do not argue that they have organizational standing. Opp'n (ECF No. 33) at 18-24. "Federal courts start from the presumption that they lack such jurisdiction," and "the party invoking a federal court's jurisdiction has the burden of proving it." *U.S. Conf. of Cath. Bishops v. Dep't of State*, 770 F. Supp. 3d 155, 161 (D.D.C. 2025) (McFadden, J.). Plaintiffs therefore have not established organizational standing.

remain in effect. Mot. at 17. So there is no reason to think Plaintiffs will suffer any informational injury.

Plaintiffs' alleged harms are therefore rooted in mere speculation. And such "[s]peculation is ordinarily fatal to standing." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017); *see also Elec. Priv. Info. Ctr. v. FAA,* 892 F.3d 1249, 1255 (D.C. Cir. 2018) (requiring "nature of the injury alleged" not to be speculative); *Cross v. EEOC*, --- F. Supp. 3d ---, 2025 WL 3280764, at *8 (D.D.C. Nov. 25, 2025) (concluding that plaintiff lacked standing, and accordingly dismissing suit *sua sponte*, where the plaintiff's allegations "'require[] speculation' beyond what standing doctrine permits").

Additionally, even if Plaintiffs or their members could establish informational injury, they cannot link that injury to any claimed statutory violation that the Court can redress. At best, Plaintiffs have pointed to an alleged delay in accessing information and the processing of some members' restricted-use data license applications. But because Plaintiffs have not asserted a claim for "agency action . . . unreasonably delayed" under 5 U.S.C. § 706(1), there is no meaningful connection between Plaintiffs' claimed injury, the claims Plaintiffs assert, and the relief they seek.

More generally, Plaintiffs simply lack standing to ask this Court to dictate the Department's policy decisions as Defendants work through how best to implement statutory requirements. *See United States v. Texas*, 599 U.S. 670, 677 (2023) (noting as a general matter, "a plaintiff lacks standing to bring such a suit" that "order[s] the Executive Branch to change its arrest or prosecution policies."); *accord Cross*, 2025 WL 3280764, at *6 ("Agency enforcement discretion applies across the board, not just when courts agree with agency decisions. Again, standing doctrine binds the Court's hands."). Choices about how to manage the Institute's functions are policy decisions. And federal courts are not "continuing monitors of the wisdom and soundness" of the Executive

Branch's implementation of its statutory mandates." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006).

### B.  Plaintiffs Fail to Demonstrate Associational Standing.

Plaintiffs cannot carry their burden to establish associational standing because they have not identified any specific members who have been allegedly harmed by Defendants' actions. Mot. (ECF No. 32) at 21-22. Plaintiffs point to paragraphs in the Amended Complaint that reference members generically. Opp'n (ECF No. 33) at 32-33; Am. Compl. (ECF No. 31) ¶ 121 ("Plaintiffs NAEd's and NCME's members"); *id.* ¶ 122 ("[o]ne NAEd member"); *id.* ¶ 123 (same); *id.* ¶ 124 ("One member of NAEd and NCME" and "[t]his member"); *id.* ¶ 125 ("One member"); *id.* ¶ 126 ("One NAEd member"); *id.* ¶ 127 ("One of Plaintiff's members"). Such vague references to "unidentified members" are insufficient to establish standing. *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011); *see also* Mot. (ECF No. 32) at 21-22 (collecting cases).

Even if Plaintiffs could point to specific members, Plaintiffs still have not demonstrated that these members' face cognizable harms. *See Elec. Priv. Info. Ctr.*, 878 F.3d at 379; *Cross*, 2025 WL 3280764, at *8. As noted above, any harm based on alleged inability to access data is speculative, and any harm based on alleged agency delay is not tethered to Plaintiffs' claims.

### III.  The Court Lacks Jurisdiction Over Plaintiffs' Challenge to the Cancellation of the Institute's Contracts.

Plaintiffs' claims challenge the termination of the contracts and are therefore precluded from review under the Tucker Act.

To start, the claims challenging the termination of the studies are essentially actions grounded in contract under the two-part test articulated by the D.C. Circuit in *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). First, Plaintiffs base their claims on contract rights. *See id.* As noted, Plaintiffs rely primarily on the termination of the contracts supporting the studies

to infer some decision to terminate those studies, as well as the general reduction in staffing at the Institute to support the work on those contracts, as the basis for their claims. *See, e.g.,* Am. Compl. (ECF No. 31) ¶¶ 61, 68-69.

Second, "the type of relief" that Plaintiffs seek confirm that this is in "essence a contract action." *Megapulse*, 672 F.2d at 968. Plaintiffs ask the Court to set aside the alleged termination of those studies, which they allege were performed through contracts. *See* Am. Compl. Prayer for Relief; *id.* ¶¶ 30-136. In other words, Plaintiffs essentially ask this Court to reinstate the contracts for those studies, which this Court has already found "can look a lot like a jurisdictionally improper order for specific performance." Mem. Op. (ECF No. 27) at 23.

In their response, Plaintiffs do not dispute that they are unable to request the reinstatement of any contract by this Court. Instead, they disavow any reliance on the contracts. But the Amended Complaint relies on contract theories—and Plaintiffs cannot avoid the Tucker Act by altering their claims on the fly. *See Kingman Park Civic Ass'n*, 27 F. Supp. 3d at 160.

### IV.     **Plaintiffs Fail to Sufficiently Allege Claims Under the APA.**

No matter how construed, Plaintiffs fail to plausibly allege valid claims under the APA. First, on Plaintiffs' own telling, Plaintiffs challenge agency inaction. But they do not (and could not) assert an APA claim to compel agency action unlawfully withheld or unreasonably delayed. Second, relatedly, Plaintiffs fail to seek judicial review of a discrete agency action. Third, there are adequate alternative remedies available as to any challenges to the termination of contracts, thus precluding the APA challenges as framed in the Amended Complaint. Finally, the Department's actions are committed to agency discretion by law.

### A. Plaintiffs Do Not Seek to Compel Agency Action Unlawfully Withheld or Unreasonably Delayed.

Plaintiffs repeatedly assert that they are challenging Defendants' inaction, not action. Specifically, Plaintiffs purport to "challenge Defendants' failure to comply . . . with statutory mandates requiring IES to collect and make public ten education-related datasets." Opp'n (ECF 33) at 26. According to Plaintiffs, the "core" of their claims is "that Defendants' 'failed to take . . . action that [they are] required to take.'" *Id.* at 34 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).

Even accepting Plaintiffs' departure from the contract-focus of the Amended Complaint, their theory fails. As Plaintiffs' own authority confirms, a claim that an agency must take some discrete action it has not taken is properly asserted under 5 U.S.C. § 706(1). *See Norton*, 542 U.S. at 64. That provision authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Resolving a Section 706(1) claim "is ordinarily a complicated and nuanced task" requiring the consideration of various factors. *See, e.g.*, *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

But Plaintiffs have not asserted a claim under 5 U.S.C. § 706(1)—much less explained how they satisfy the complex standard applicable to such claims. Plaintiffs' APA claims fail for that reason alone.

### B. Plaintiffs Do Not Seek Judicial Review of a Discrete Agency Action.

Plaintiffs' Amended Complaint (as opposed to their briefing) attempted to identify particular terminated studies; but that cannot save their claims from dismissal, either. Although Plaintiffs broke up their Counts to address specific studies, their ultimate goal—to bring a broad-based programmatic challenge to the Institute's management of its programs—remains clear. The Amended Complaint specifically states that Plaintiffs bring this case to counter "Defendants'

imminent and ongoing failure to maintain [] this data as required by Congress." Am. Compl. (ECF No. 31) ¶ 7. Again, this is exactly the type of general broad-based claim the Supreme Court rejected in *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990) and *Norton*, 542 U.S. at 64.

Regardless, contracts for many of the studies Plaintiffs identify have been rescoped, recompeted, renegotiated, or otherwise remain in effect. Mot. (ECF No. 32) at 17-19. So those claims fail on the merits for the same reasons they are moot.

Plaintiffs infer some agency decision about the Institute's status based on other alleged events, the termination of contracts for some of the studies, reduced staffing, and lack of information from the Institute regarding these studies. *See* Am. Compl. ¶ 5. But that is the exact kind of "bundling together a collection of discrete actions, presenting them as facets of a single event, and then challenging that event instead of the individual actions" that the Court has already held improper for APA review. *See* Mem. Op. (ECF No. 27) at 11. There is no basis for this Court to rule any differently than before. The Court should find that Plaintiffs have failed to identify any discrete agency actions for this Court's review. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996).

### C.  There Are Adequate Alternative Remedies Available.

Plaintiffs also fail to demonstrate that there are no adequate alternative remedies under the Tucker Act with respect to any challenges to the cancellation of the contracts for certain studies and the peer review access program.

Plaintiffs mainly rehash their flawed argument that they do not assert contract claims, which fails for the reasons discussed above. *See* Opp'n (ECF No. 33) at 37. They also argue that they are not parties to the contracts and, therefore, relief under the Tucker Act is unavailable to them. *Id.* But Plaintiffs themselves have emphasized their purported entitlement to the data and research from those studies for which Education had entered into contracts. *See* Opp'n (ECF No.

33) at 19-20. So Plaintiffs may constitute third-party beneficiaries for which the Tucker Act could potentially provide relief. *See Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021).[6] That Plaintiffs may not ultimately *receive* all the relief at the Court of Federal Claims that they request here does not mean their relief would be inadequate. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) ("To hold that the [Contract Disputes Act] does not apply merely because, under that scheme, plaintiff cannot receive all its requested remedies, would intolerably upset the congressional purpose underlying the Act.").

Because there are alternative adequate remedies of law as to Plaintiffs' challenges to the determination of the contracts, review under the APA is inappropriate.

### D. The Department's Programmatic Implementation Decisions Are Committed to Agency Discretion.

In the end, Plaintiffs are not really challenging *whether* Defendants are complying with statutory requirements; they are challenging *how* Defendants carry out their statutory functions.

President Trump and Secretary McMahon have publicly articulated their findings about the presence of inefficiency and waste at the Department. *See* Mot. (ECF No. 32) at 12 (citing Exec. Order No. 14,242 § 1, 90 Fed. Reg. 13,679 (Mar. 20, 2025) (the "Department Executive Order"); Mar. 3, 2025, Speech).[7] As those pronouncements underscore, the Secretary has taken steps to realign the Department through contract cancellations and programmatic decisions. *See* Mot. (ECF No. 32) at 31-32. Yet Plaintiffs' Amended Complaint amounts to a challenge to the

---

[6]    Defendants do not concede that Plaintiffs could establish jurisdiction in the Court of Federal Claims or would constitute third-party beneficiaries entitled to Tucker Act relief.

[7]    "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014); *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

- 11 -

Department's policy decisions about how to best implement its statutorily-mandated functions within the Institute.

The decisions that Plaintiffs purportedly challenge are not appropriate for APA review as a matter of law because they are entirely within the agency's discretion. *See* Mem. Op. (ECF No. 27) at 16 ("It is not the place of this Court to substitute its own judgment for that of the agency on staffing issues."); *id.* at 13-14 (noting that "a unilateral dismantlement (or large-scale reorganization)" "cannot be laid before the courts for wholesale correction under the APA" (citation modified)); *Lincoln v. Virgil*, 508 U.S. 182, 191-92 (1993) (noting that agencies are permitted to "meet [their] statutory responsibilities in what [the new administration] sees as the most effective or desirable way."). "The Institute has flexibility on how to carry out its statutory missions." Mem. Op. (ECF No. 27) at 3. Defendants are simply exercising that flexibility.

Moreover, Plaintiffs cannot meet their burden by arguing that Defendants "ignore statutory directives." Opp'n (ECF No. 33) at 42. That inference is "unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). Here, Defendants pointed to the Contract Executive Order and the Department Executive Order, which both require the Department to pursue any review of contracts and grants for termination or modification, or other programmatic changes, pursuant to law. Exec. Order No. 14,222 § 3(b), 90 Fed. Reg. 11,095 (Feb. 26, 2025) (the "Contract Executive Order"); Department Executive Order § 2(b). If Plaintiffs are unsatisfied with the pace of Defendants' statutory compliance, they may attempt to raise such a claim (but have not).

Remedial principles confirm that Plaintiffs have not asserted a valid APA claim. In APA cases challenging final agency action, "[t]he district court ha[s] no jurisdiction to order specific relief." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). "Unlike a district

court managing a garden variety civil suit, a district court reviewing a final agency action does not perform its normal role but instead sits as an appellate tribunal." *Id.* Accordingly, "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995). Here, Plaintiffs frame their claims as challenging final agency action—but in reality improperly ask the Court to order Defendants what to do.

V. **Defendants Should Be Relieved of Their Obligation to File a Certified List of the Administrative Record and Serve the Administrative Record Simultaneously with this Motion.**

Finally, Defendants established that production of an administrative record is unnecessary to resolve Defendants' motion to dismiss. Mot. (ECF No. 32) at 32-33. Plaintiffs counter that an administrative record is necessary to resolve Defendants' mootness argument because, they say, the information on USAspending.gov is "often inaccurate and incomplete." Opp'n (ECF No. 33) at 47. But Plaintiffs have disclaimed any reliance on contract status, so that cannot be a basis for requiring production of an administrative record. In any event, because the "information [is] posted on [an] official public website[] of [a] government agenc[y]," the Court can take judicial notice. *Pharm. Rsch. & Mfrs. of Am.*, 43 F. Supp. 3d at 33 (citing *Cannon v. Dist. of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)).

Even if the Court finds it is unable to resolve the mootness question without a certified administrative record, it need not order the production of one. Defendants have relied entirely on allegations in the Amended Complaint or facts of which the Court may take judicial notice. *See*

*Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).[8]  Moreover, Defendants have raised significant subject-matter jurisdiction and other threshold issues in their Motion to Dismiss; if the Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  Indeed, Plaintiffs do not dispute that the Court must resolve jurisdictional arguments before proceeding on the merits.  Opp'n (ECF No. 33) at 46-47.  Tellingly, Plaintiffs did not need an administrative record to oppose Defendants' motion to dismiss, *see generally* Opp'n, nor are there factual issues to resolve via an administrative record in ruling on the motion to dismiss.  As a result, there is no need for the Court to require production of the administrative record to consider and decide Defendants' motion to dismiss.

\*     \*     \*

---

[8]     Defendants correct a citation in their Motion. Instead of the citation to *Vico Prods. Co. v. Nat'l Lab. Rels. Bd.*, 333 F.3d 198, 198 (D.C. Cir. 2003) (citations) on Page 6 of ECF No. 32, the correct citation should be to *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations modified).

## CONCLUSION

For these reasons and those stated in Defendants' Motion, Plaintiffs' Amended Complaint should be dismissed. Defendants should also be relieved of the obligation to file a certified list of the administrative record and serve the administrative record pending the Court's resolution of Defendants' motion to dismiss.

Dated: January 5, 2026         Respectfully submitted,

                               STANLEY E. WOODWARD, JR.
                               Associate Attorney General

                               MICHAEL WEISBUCH, Senior Counsel
                               ANNA EDWARDS, Counsel
                               Office of the Associate Attorney General

                               JEANINE FERRIS PIRRO
                               United States Attorney

                               By:      */s/ Dimitar P. Georgiev*
                                   DIMITAR P. GEORGIEV, D.C. Bar #1735756
                                   ERIKA OBLEA, D.C. Bar #1034393
                                   Assistant United States Attorneys
                                   601 D Street, NW
                                   Washington, DC 20530
                                   (202) 252-2500 (main)
                                   dimitar.georgiev-remmel@usdoj.gov
                                   Erika.oblea@usdoj.gov

                               *Attorneys for the United States of America*