**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ACADEMY OF EDUCATION and NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF EDUCATION and <br><br> LINDA MCMAHON, *in her official capacity as Secretary of Education*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-1266 (TNM) |

**PLAINTIFFS' MOTION FOR CONSIDERATION OF EXTRA-RECORD EVIDENCE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

   I.   Consideration of Extra-Record Evidence Is Necessary to Enable Effective  Judicial Review. .......................................................................................................... 2

      A.  The Administrative Record Is So Bare that It Frustrates Judicial Review. ..................... 3

      B.  Defendants' Designation in the Record of Testimony from Acting Director Soldner Demonstrates His Relevance to the Issues in This Case.................................................. 6

CONCLUSION.................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Department of Labor*,
349 F.R.D. 243 (D.D.C. 2025) ................................................................................ 5, 6

*All. for Retired Ams. v. Bessent*,
No. 25-cv-0313, 2025 WL 1114350 (D.D.C. Mar. 20, 2025) .................................... 6

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
143 F. Supp. 2d 7 (D.D.C. 2001) ............................................................................. 4

*Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Justice*,
No. 25-cv-298 (D.D.C. May 14, 2025), ECF No. 75 ............................................... 5

*Camp v. Pitts*,
411 U.S. 138 (1973) ................................................................................................. 3

*Hill Dermaceuticals, Inc. v. FDA*,
709 F.3d 44 (D.C. Cir. 2013) ................................................................................... 3

*IMS, P.C. v. Alvarez*,
129 F.3d 618 (D.C. Cir. 1997) ................................................................................. 3

*Marcum v. Salazar*,
751 F. Supp. 2d 74 (D.D.C. 2010) ........................................................................... 3

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................................... 4

*P.R. Higher Educ. Assistance Corp. v. Riley*,
10 F.3d 847 (D.C. Cir. 1993) ................................................................................... 1

*Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
448 F. Supp. 2d 1 (D.D.C. 2006) ............................................................................. 2

*United Student Aid Funds, Inc. v. Devos*,
237 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................. 3

**Statutes**

5 U.S.C. § 706 .............................................................................................................. 6

**INTRODUCTION**

Plaintiffs respectfully move this Court for consideration of limited extra-record evidence necessary to facilitate effective judicial review of the agency action Plaintiffs challenge. Plaintiffs specifically seek consideration of the November 3, 2025 deposition of Matthew Soldner, Acting Director of the Department of Education's Institute of Education Sciences, filed in *American Educational Research Association v. Department of Education*, No. 8:25-cv-01230-SAG (D. Md.), ECF No. 76-3, and attached hereto as Exhibit 1. Pursuant to Local Civil Rule 7(m), undersigned counsel has conferred with Defendants' attorneys regarding this motion. Defendants oppose the relief sought.

In their First Amended Complaint, Plaintiffs allege the Institute of Education Sciences ("IES") unlawfully disrupted ten studies and failed to comply with the Education Sciences Reform Act's data-collection, analysis, maintenance and dissemination requirements in violation of the Administrative Procedure Act ("APA"). In its February 25, 2026 decision denying Defendants' motion to dismiss, this Court noted its expectation that, at the summary-judgment stage, "the Court, and the parties will be able to evaluate the validity of [Defendants'] claim[ed defenses] with the benefit of the Administrative Record." ECF No. 40 at 24. But the Administrative Record[1] ("the Record") is largely bereft of any "materials that were before the Department at the time its decision [to cancel the studies] was made," *P.R. Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 850–51 (D.C. Cir. 1993), much less materials that definitively establish the current status of the studies.

---

[1] Although Defendants served Plaintiffs with the Administrative Record on April 30, 2026, *see* ECF No. 45, Plaintiffs' subsequent review of the Administrative Record revealed omissions that Defendants agreed to cure through the production of a supplemental administrative record, which they served on June 2, 2026. ECF No. 49. References to "the Record" include both the original and supplemental administrative records.

Instead, the Administrative Record consists of a February 7, 2025 e-mail chain approving the cancellation of the contracts (AERA_AR_00001–16), a February 10, 2025 email directing IES to cancel the contracts (VA000001–09), a supplemental directive ordering the cancellation of several more contracts on February 13, 2025 (ED_AERA_AR_00027), the underlying contracts themselves (*e.g.*, VA000323–95), the documents terminating the contracts for the government's convenience (*e.g.*, VA000396–97), thousands of pages of contracts executed or otherwise modified *after* the February 2025 discontinuation of the studies (*e.g.*, VA002042–101),[2] and various 2026 *post-hoc* materials assembled in response to litigation (*e.g.*, VA002223 (April 2026 IES Blog Post)); VA003432–34 (May 2026 Declaration of Acting IES Director Matthew Soldner)). This Record does not fully address the questions central to this Court's review.

## ARGUMENT

I.      **Consideration of Extra-Record Evidence Is Necessary to Enable Effective Judicial Review.**

The central questions in this case are 1) whether Defendants' termination of 10 research studies conducted by IES was arbitrary and capricious, and 2) if so, what remedy should issue. Because "simply reviewing the administrative record is not enough to resolve th[is] case," extra-record review is appropriate. *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006). Such review would not only facilitate effective judicial review but would also ensure that this Court has the information required to effectively tailor any related remedial relief.

---

[2] Although the inclusion of post-hoc information in the Administrative Record is irrelevant for purposes of determining whether Defendants acted arbitrarily and capriciously, Plaintiffs recognize that the purported reinstatement of certain studies may be relevant to questions of remedy.

Judicial review of agency action under the APA is generally confined to the administrative record. *See* 5 U.S.C. § 706 (courts assessing agency action under the APA "shall review the whole record or those parts of it cited by a party"). In reviewing the administrative record, a court "should have before it neither more nor less information than did the agency when it made its decisions." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) (citation modified); *see also Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010) (administrative record must include all information the agency considered "either directly or indirectly.").

"Although the number of situations in which extra-record evidence may be considered has dwindled over time, the D.C. Circuit has consistently stated that where the district court cannot determine from the administrative record whether the agency complied with its procedural obligations, the district court may consider extra-record evidence." *United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 3–4 (D.D.C. 2017) (citation modified). Extra-record evidence is especially critical when there has been "such a failure to explain administrative action as to frustrate effective judicial review." *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973); *see also Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (Although "*Esch* has been given a limited interpretation since it was decided, . . . it may be invoked to challenge gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review.") (citing *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010)). Because this is such a case, the Court should grant Plaintiffs' motion for consideration of extra-record evidence.

## A. The Administrative Record Is So Bare that It Frustrates Judicial Review.

Despite the basic principle that "a complete administrative record should include all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision," *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F.

Supp. 2d 7, 12 (D.D.C. 2001) (internal quotations and citations omitted), there are only two documents properly included in the Record that purport to show what might have influenced IES's decision to terminate the ten studies at issue: 1) a February 7, 2025 e-mail directive to do so, and 2) the February 10, 2025 email directive that actually set the terminations in motion. *See* Ex 1 (EDAERA_AR_00003–00016); Ex. 2 (VA000001–09). The remainder of the Record is comprised of more than three-thousand pages of contract-related and other post-decisional documents, which offer no insight into the lawfulness of Defendants' actions at the time they were taken.

Not only does the Record as constituted contain little information about the reasons for Defendants' challenged actions, but it also fails to offer conclusive answers to other questions this Court has identified as central to the case: "[w]hat contracts exist, which programs they cover, and *whether they adequately fulfill various statutory obligations*." ECF No. 40 at 19 (emphasis added). Defendants have included documents in the Record that show certain contracts were either descoped—primarily by removing tasks and activities included in earlier contracts related to the same studies—or reinstated. But it remains unclear what these post-decisional documents actually establish about the current status of the studies at issue, let alone Defendants' compliance with their statutory obligations.

Given these circumstances, the Court should consider existing deposition testimony from Acting Director Soldner that helps answer these questions. This extra-record evidence is not the sort barred because it permits courts to "substitute [their] judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Indeed, the D.C. Circuit has made clear that courts may always consider materials "outside of the administrative record" for the "permissible purpose" of elucidating agency action, including what the agency decided. *Hispanic Affs. Project v. Acosta*, 901 F.3d 378, 386 n.4 (D.C. Cir. 2018).

4

This Court has considered extra-record evidence in other cases presenting similar circumstances. For example, in *AFL-CIO v. Department of Labor*, the Court noted that defendants had not provided a "standard administrative record," which "typically [included] the facts before the agency and reasons the agency gave," but—as in this case—"ha[d] so far only relied on declarations taken after the alleged policies or decisions took effect." 349 F.R.D. 243, 249 (D.D.C. 2025). The Court therefore permitted plaintiffs to conduct extra-record discovery to "'fill[] in gaps'" and "'determine what the agency actually did.'" *Id.* (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993)).

Another case, *Amica Center for Immigrant Rights v. U.S. Department of Justice*, is also instructive. There, this Court noted that the "parties ha[d] diametrically opposed views" in a case in which plaintiffs alleged that the government ended certain programs when it terminated its contract with "the only prime contractor that administered the [p]rogram," but the government "maintain[ed] that the [p]rograms remain[ed] in place" and that it had only "terminated th[e] prime contract for the convenience of the government." ECF No. 75 at 1, *Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Justice*, No. 25-cv-298 (D.D.C. May 14, 2025). The Court explained that the "administrative record focuse[d] exclusively on Defendants' decision to suspend or terminate the prime contract, but d[id] not otherwise shed light on Defendants' decisions, if any, regarding the fate of the [p]rograms" beyond the declaration of an acting director of the agency which asserted that the agency "will satisfy its legal orientation services' obligation by providing a consolidated federalized program." *Id.* at 2. Because "the Court [was] unpersuaded that it c[ould] adjudicate Plaintiffs' claims absent a clear understanding of the facts," it ordered supplementation of the administrative record *sua sponte*. *Id.* at 3–4.

5

As the Court recognized in a similar case challenging Department of Governmental Efficiency-driven agency action, "unlike the typical APA case, which involves the enactment of a rule or other agency action taken in public view[,] only the Defendants know the 'contours' of [their] actions." *All. for Retired Ams. v. Bessent*, No. 25-cv-0313, 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025) (citation omitted). The same is true here: Only the Department knows what drove its decisions to terminate and descope these studies and the full implications of those decisions. As the Court has held in other atypical APA cases, consideration of the evidence "requested here is appropriate, for it is not so much fact-finding as it is filling in gaps to determine what the agency actually did." *AFL-CIO*, 349 F.R.D. at 249 (citation modified).

## B. Defendants' Designation in the Record of Testimony from Acting Director Soldner Demonstrates His Relevance to the Issues in This Case.

Given that Defendants have already designated testimony from Acting Director Soldner as part of the Record, *see* VA002224–26; VA0003432–34, they cannot seriously contest the value of the information he possesses. Moreover, their inclusion of this testimony suggests that they, too, recognize that extra-record evidence will facilitate judicial review in this matter. Having already designated as part of the Record some extra-record evidence from Acting Director Soldner, Defendants should not now be permitted to prevent Plaintiffs from directing this Court to other aspects of his testimony relevant to this Court's review.

That testimony provides clarity on issues the current Record is silent on. For example, it clarifies the extent to which IES experts participated in the challenged decisions. Soldner testified that he was not included in any meetings to discuss the cancellation of contracts supporting IES's research studies, and that he had "no input prior to an initial determination to terminate," despite his role as the person best-positioned to provide information about the IES contracts. Soldner Dep. 96:13–98:13, 99:6–9. Soldner's testimony also outlines important considerations, and thus

6

relevant factors, that should be weighed before canceling a contract. For example, he would have advised Defendants to weigh "the relative value of completing [a research] project, given its current status, as opposed to cancellation." *Id*. at 99:10–17. This would save the Department from losing valuable research data merely to recoup relatively modest sunk costs, *id*. at 99:10–100:9, and avoid situations where a contract is cancelled after the bulk of funding has already been disbursed. Acting Director Soldner also noted that he would have flagged whether a contract "supported a mission critical function" or "was required specifically by statute." *Id*. at 101:5–9. None of this occurred. Further, there was no "individualized process for feedback about each contract" before the blanket termination was issued, *id*. at 116:10–16, and Soldner was never asked to provide information about stakeholders who might be relying on the terminated contracts, *id*. at 113:18–114:1.

As for clarity regarding what the agency decided, Soldner testified that he was unaware of any plan prior to the terminations to rebid the underlying work to alternative contractors. *Id*. at 114:22–115:8. As a result, "[a]ny contract that was terminated and not reinstated would have resulted in the cessation of that activity." *Id*. at 110:13–19; *see also id*. at 115:9–13 (confirming that IES lacked the internal capacity to perform the work previously carried out by contractors using only its own staff). Solder confirmed that it was not possible for IES to carry out all of its critical functions while the contracts were cancelled. *Id*. at 179:13–180:4. He further confirmed that "[c]urrently, no longitudinal studies are in the field." *Compare id*. at 131:19–22, *with* Soldner Decl. ¶ 8, VA003433 (now vaguely claiming that "IES continues to evaluate whether specific aspects of some discontinued studies, such as the Early Childhood Longitudinal Study, might be resumed.").

7

Refusing to consider relevant information contained in Soldner's deposition would not only hamper this Court's review, but would also significantly prejudice Plaintiffs by allowing Defendants to strategically fashion and cherry-pick the testimony that is most favorable to them. Having already opened the door to extra-record testimony from Soldner, Defendants should not now be permitted to foreclose Plaintiffs from walking through it.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion requesting that it consider, as extra-record evidence, Matthew Soldner's November 3, 2025 deposition.

Dated: July 10, 2026

Respectfully submitted,

*/s/ Pilar C. Whitaker*

Amy I. Berman, DC Bar No. 480541
NATIONAL ACADEMY
OF EDUCATION
500 Fifth Street, NW
Washington, DC 20001
(202) 334-2341
aberman@naeducation.org

Pilar C. Whitaker*
Kameron Johnston*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
kjohnston@naacpldf.org
pwhitaker@naacpldf.org

Samuel Spital, DC Bar No. NY0248
Colin Burke*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
sspital@naacpldf.org
cburke@naacpldf.org

Kelly Gardner*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
260 Peachtree Street NW, Suite 2300
Atlanta, GA 30303
(332) 282-6613
kgardner@naacpldf.org

*Admitted *pro hac vice*

9